CARL JOCKHECK *et al.* v. B. M. DAVIES.

PARTITION, *Who May Bring.* A party owning an undivided half of an improved city lot, having acquired title to it from a person who had been exercising acts of ownership, paying taxes, building sidewalks, and receiving small sums for its use for twenty-four years, can maintain an action for partition of it against the owners of the other undivided half, who, at the trial, do not show that, before the commencement of the suit, they absolutely denied or distinctly repudiated the interest of the plaintiff in the partition proceedings.

*Error from Shawnee District Court.*

PARTITION. Judgment for plaintiff *Davies*, at the September term, 1887. The defendants, *Jockheck* and another, bring the case to this court. The opinion states the material facts.

*David Overmyer*, for plaintiffs in error.

*Quinton & Quinton*, for defendant in error.

Opinion by SIMPSON, C.: B. M. Davies commenced this action in the district court of Shawnee county against Carl Jockheck and Helena Schaffer, whom he alleged were tenants in common with him, for the partition of lot No. 250 Kansas avenue, city of Topeka. Joseph Erhart was also made a party, for the purpose of determining whatever interest he

might have in the property. Davies alleged possession in his petition. Jockheck and Schaffer filed answers denying that Davies had any interest in the lot, and claiming to be the owners. Erhart filed his answer claiming a mortgage on the lot executed by Davies. A jury was waived, a trial had, and a judgment rendered in favor of Davies. The court found that Davies was the owner in fee simple of an undivided one-half interest, and that Jockheck and Schaffer, as the heirs of John A. Schaffer, were the owners of the other undivided half interest, and ordered partition if it could be made, or if not, that the lot be sold, and the proceeds of sale be divided accordingly. From this order of partition Jockheck and Schaffer bring the case here for review.

The material facts are these: The record shows that on the 7th day of November, 1862, the fee-simple title to the lot in question was in John P. Greer and Robert Walker, and all the parties to the action claim title from that source. During the year 1862, Schaffer (the father of Helena Schaffer, who died in January, 1872, and whose widow Carl Jockheck subsequently married) and Erhart were in partnership, contracting and building masonry work in the city of Topeka. John P. Greer contracted with them to do the masonry work on a building that he was erecting on Sixth street, and in payment of said work John P. Greer and wife and Walker made a deed to Erhart and Schaffer for the lot in controversy. This deed was signed and acknowledged on the 7th day of November, 1862; whether it was ever delivered or not was one of the controverted questions of fact at the trial. This deed was not recorded until July, 1886. On the 11th day of December, 1862, J. P. Greer and wife and Walker made a deed for the lot in suit to Joe Erhart that was recorded in February, 1863. Erhart paid the taxes and produced the tax receipts at the trial for the years 1863, '64, '65, '66, '67, '76, '77, '78, '79, '80, '81, '82, '83, '84, '85. During a part of these years Erhart received small sums of money for the use of the lot for exhibitions and sale of nursery trees, and by the owner of a daguerreotype wagon. Erhart also constructed

the sidewalks in front of said lot. The taxes of 1867 were paid by Erhart and Schaffer. Erhart states in his evidence that he thought that when he paid taxes Schaffer or Jockheck paid him back. On the 9th day of December, 1871, Joe Erhart made a quitclaim deed to John A. Schaffer for the one undivided half of and interest in lot No. 250, which was recorded on the 14th day of December, 1871, but before the execution of this deed Erhart had recognized Schaffer's interest in the lot, and they had joined in the payment of the taxes due thereon. At the time of Schaffer's death he left a widow and one child, Helena Schaffer, surviving. The widow married Carl Jockheck and died before the commencement of this action. After the death of Schaffer the same relations were sustained towards this lot by Erhart and Jockheck as existed between Erhart and Schaffer. They shared in the payment of taxes, and in the small rental received. On the 19th day of January, 1884, a contract was executed between Elizabeth F. Richie, who owned lot No. 248, lying north and immediately adjoining the lot in controversy, and Joseph Erhart and Rosa Jockheck, that recites that the parties of the second part, being Joseph Erhart and Rosa Jockheck, own lot No. 250. This agreement was about a party wall, and is signed by Joseph Erhart and Rosa Jockheck. On the 28th day of May, 1885, an agreement was made with B. M. Davies, who owned lot No. 252, immediately south and adjoining lot No. 250, by Rosa Jockheck, as guardian of Helena Schaffer, and Joseph Erhart about a party wall. On the 20th day of July, 1886, Joseph Erhart and wife sold and conveyed by warranty deed an undivided one-half of said lot No. 250 to B. M. Davies, and took a mortgage to secure the payment of the purchase-money from Davies.

At the trial Howel Jones was allowed to testify, over the objection of the plaintiffs in error, that, after the purchase of Davies from Erhart, he had a conversation with John P. Greer, who was in possession of the deed from himself and wife to Erhart and Schaffer, of date November 7, 1862, in which Greer told him that this deed had never been deliv-

ered.   The admission of this evidence is claimed as error. Joseph Erhart, while testifying at the trial, was asked if Schaffer paid him anything for conveying one-half of the lot to him, and he answered "No, sir."   Both the question and the answer were objected to, and this ruling is insisted on as error.   It is also urged that as Davies alleged possession and failed to prove it, he could not maintain this action.   Finally the contention is, that the judgment is not sustained by the evidence.

Separate and apart from the special errors assigned, the trend of the material facts and the application of legal principles are in favor of an affirmance of the judgment.   Erhart had been in possession of and had paid taxes on the lot for more than twenty years before his conveyance to Davies. The deed from Greer and wife and Walker to him had been of record for more than twenty-four years before he sold to Davies.   The deed of November 7, 1862, from Greer and wife and Walker to Erhart and Schaffer was not recorded until after the sale to Davies.   There is no intimation in the record from any source that Davies had either notice or knowledge of the existence of this deed before his purchase. Greer, the custodian, and one of the grantors of this conveyance, declared to the agent of Davies, who was seeking to make an abstract of the title to the lot, that the deed of November 7, 1862, was never delivered.   Schaffer in his lifetime, his wife after his death, and her heirs after her death, had continuously until the commencement of this suit recognized that Erhart was a part owner of the lot.   The only title shown by the heirs of Schaffer at the trial was the quitclaim. deed from Erhart for an undivided half to their ancestor. The antecedent facts are harmonious with the theory that for some reason Erhart and Schaffer had determined that the title from Greer and wife and Walker should vest solely in Erhart, as shown by the deed of December 11, rather than in them both, as was contemplated by the deed of November 7, 1862.   The subsequent quitclaim of the 9th day of December, 1871, from Erhart to Schaffer, is easily explainable on

this theory. That Erhart divested himself of all interest or title to the lot by that quitclaim, cannot be reconciled with the subsequent action of Schaffer and his heirs with reference to the possession, payment of taxes, and reception of rents by them and Erhart conjointly. The stress of these general considerations; the strong inferences arising from the particular facts recited in the record; the irresistible construction arising from the acts of Schaffer and his heirs; the application of indisputable rules of law — all compel us to say that the judgment rendered by the trial court is a legal sequence, produced by the concurrence of legal principles, equitable considerations, and facts proven.

Had the delivery of the deed of November 7, 1862, to Erhart and Schaffer been conclusively shown, it would not have affected the general result, unless knowledge of it had been brought home to Davies prior to his purchase. In the attitude of the proof on the question of delivery, Greer having at one time stated that it was not delivered, and at another time stating that it was, we could not disturb the general finding, perhaps included in the judgment, for evident reasons. Besides the fact that it was found after the lapse of many years in Greer's possession, and never having been recorded until after the Davies purchase, very greatly increases the probabilities of non-delivery. Whether or not Greer's declaration is admissible does not become very material, in the view that we have taken. It would seem that Erhart and Davies, who claims under him, are entitled to the benefit of it. Greer testifies on behalf of the plaintiffs in error that the deed was delivered, and they claim certain rights by reason of its delivery. It would surely be competent for Erhart and Davies to show an impeachment of Greer, that he had stated that it was not delivered, and while this order in the introduction of evidence was not observed, the practical result of the conflict is the same.

Again, Greer was one of the grantors in the deed, and the written instrument was in his possession. Now, in a controversy between grantees as to whether the deed had ever been

delivered, it seems that his evidence and admissions as to the fact of delivery are primary and not dependent on his agency for either or both parties. We have grave doubts about the ruling of the trial court in permitting Erhart to state, while on the witness stand, that Schaffer paid him nothing for the quitclaim deed, of date December 9, 1871, for an undivided half of the lot. But the execution and delivery of the deed is not in issue; is in fact admitted, and the consideration, whether for $1 or $500, is immaterial. Entertaining a very strong conviction that the judgment rendered below is inherently right, and being in accordance with legal rules and equitable requirements, it is not necessary to consider the question of how far the plaintiffs in error may be estopped by their attorneys having received and receipted for the fees allowed them by the court in distributing the proceeds of the sale of the lot by virtue of the partition proceedings.

One question made by the plaintiffs in error we have heretofore overlooked, and that is, that Davies, not being in possession, could not maintain the action of partition; or, to state it as strongly as in the brief, that the possession of Jockheck and Helena Schaffer was an adverse one, and that by reason of this the action of partition could not be sustained. Davies alleged possession in his petition, and having acquired the interest of Erhart in good faith, and without notice or knowledge that the plaintiffs in error claimed adverse possession, he succeeded to all the rights of Erhart, and among them Erhart's long-continued and, so far as the record discloses, his undisputed joint possession with Schaffer and his heirs until his conveyance to Davies. This is enough for Davies to maintain the action, because it is not shown that, prior to its commencement, there was an absolute denial or a distinct repudiation of his rights in the lot.

We recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.